UNITED STATES of America,
Plaintiff–Appellee,

v.

Peter John CORMIER, Defendant–
Appellant.

No. 99–30182.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2000

Filed July 24, 2000

Barry Flegenheimer, Bell, Flegenheimer & Solovy, Seattle, Washington, for the defendant-appellant.

Robb London, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: HUG, Chief Judge,
BRUNETTI and GOULD, Circuit Judges.

BRUNETTI, Circuit Judge:

Peter Cormier ("Cormier") was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He was sentenced to ten years imprisonment, followed by three years of supervised release. Cormier appeals the district court's denial of his motion to suppress a gun found during a search of his motel room. On appeal, he alleges that his consent was not voluntarily and freely given and that the search of his motel room consequently violated his Fourth Amendment rights. He also contends that the police's use of motel guest registration records in order to discover his criminal history violated the Fourth Amendment. Finally, he argues that the "knock and talk" procedure employed in this case violated Washington state law, a factor that he argues should be incorporated into federal Fourth Amendment analysis. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.

On January 13, 1997, King County Detective Brad Ray ("Ray") went to the Quest Inn ("motel"), a motel located in a traditionally high-crime area in Seattle known as the Aurora Avenue "strip," to obtain the motel's guest registration records. After retrieving the records from the motel owner, Ray returned to his office to run a criminal records check on several

of the guests staying at the motel. The records check revealed that there was a warrant outstanding on one motel guest and that Cormier, the defendant in this action, had "a fairly extensive criminal history." In addition, the records check showed that Cormier was registered with state authorities as a sex offender.

Ray then contacted Toney Peters ("Peters"), a detective working a shift along the Aurora strip, and asked her if she would be willing to follow-up on Cormier's criminal history. As a result, Peters decided to conduct a "knock and talk" interview with Cormier in his motel room. Shortly after 8:00 P.M. on January 13, Peters approached Cormier's motel room from the outside and knocked on his door. Peters knocked only briefly before Cormier answered. He was wearing only a bathrobe and socks. Peters immediately identified herself as a police officer and asked Cormier if she could speak with him inside his room so that other motel occupants would not overhear their conversation. Cormier stepped back and allowed Peters to enter his room. Peters was dressed in plain clothes but her badge was visible because it was hanging on a chain around her neck.

After entering his motel room, Peters asked Cormier if she could question him. He stated that she could. Peters first asked Cormier whether he was the only guest registered to the room or whether there were other occupants. He responded that he was the only registered guest and that he was staying alone. Peters then informed Cormier that she was familiar with his criminal history and asked him whether he had any drugs or other illegal items in the motel room. He adamantly denied that he had any illegal contraband in the room. Peters then asked whether he would mind if she took a look around, and he stated that she could "go ahead."

Peters first found a bag of clothing located under the bathroom sink and there was some white powder residue visible on the clothes. Peters then moved to a doorless closet where she noticed several leather jackets on hangars. She noticed that the collar on one of the jackets had a hair gel stain, which was very similar to the gel in Cormier's hair. Peters then reached into the pocket of one of the jackets and found a loaded handgun. Cormier never asked Peters to stop searching nor did he ever protest the scope of the search.

After finding the gun, Peters asked Cormier whether the gun belonged to him. He answered that the gun belonged to some fishermen on a boat in Alaska.[1] Peters placed Cormier under arrest after calling Officer Johnson, who was waiting in the car at the time, for back-up assistance. At that point, Cormier was arrested on suspicion that he had violated the Washington Uniform Firearms Act by being a convicted felon in possession of a firearm. Cormier was escorted to Johnson's police car and driven to jail.

Cormier was convicted by a jury of violating 18 U.S.C. § 922(g), a provision that prohibits a convicted felon from possessing a firearm. During the trial, Cormier filed three motions to suppress the gun found in his motel room. The district court denied all three motions. Specifically, the district court found that Cormier voluntarily consented to the entry and search of his motel room, even if the procedure employed by Peters had violated Washington state law. *See State v. Ferrier,* 136 Wash.2d 103, 960 P.2d 927, 934 (1998) (requiring police officers, when conducting a "knock and talk," to inform the consenting person that they have the right to refuse or revoke consent at any time). Cormier was convicted and sentenced to 120 months imprisonment, followed by three years of supervised release. This appeal followed.

## II.

Cormier's first contention on appeal is that the police unlawfully seized the guest

---

**1.** This statement was later suppressed because it was made after Peters knew she would arrest Cormier and prior to any *Miranda* warnings.

registration records from the owner of the Quest Motel. Washington law requires "[e]very hotel and trailer camp [to] keep a record of the arrival and departure of its guests in such a manner that the record will be a permanent one for at least one year from the date of departure." *See* Wash. Rev.Code § 19.48.020. Although a motel owner is required to keep registration records, Cormier argues that the records are solely for business regulation purposes and not for police investigatory use. Even if Cormier is correct, however, he has still failed to allege a Fourth Amendment violation because he has no reasonable expectation of privacy in the records.

 In *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Supreme Court considered whether a bank depositor has a reasonable expectation of privacy in bank records, including such items as financial statements and deposit slips. *See id.* at 441–43, 96 S.Ct. 1619. Similar to the Washington statute at issue in this case, the bank in *Miller* was required by law to retain financial records belonging to its depositors. *See id.* at 443, 96 S.Ct. 1619. Recognizing that bank records are highly personal documents, the Supreme Court nevertheless found that "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Id.* The Court reaffirmed its view that a person does not have a privacy interest in information revealed to a third party and subsequently conveyed to governmental authorities, even if the information is revealed on the assumption that it will be used for a limited purpose and that the third party will not betray their confidence. *See id.; see also United States v. Choate*, 576 F.2d 165, 175–77 (9th Cir.1978) (holding that there is no reasonable expectation of privacy in mail covers). The key factor, *Miller* held, is that a person does not possess a reasonable expectation of privacy in an item in which he has no possessory or ownership interest. *See Miller*, 425 U.S. at 440, 96 S.Ct. 1619.

Although *Miller* addressed whether a depositor possesses a Fourth Amendment interest in bank records, the analysis is equally applicable to motel registration records. Cormier was required to state his name upon checking into the motel. The motel then assigned him a room and recorded both his name and room number on the guest registration records. Although the police requested the records from the motel, the motel owner agreed to provide the records to the police voluntarily. Furthermore, unlike the bank records in *Miller*, the guest registration records did not contain highly personal information about Cormier. Instead, the registration records merely stated his name and room number. The *Miller* rationale is even more compelling in the context of guest registration records because no highly personal information is disclosed to the police. In addition, the one other circuit that has considered the question held, in accordance with *Miller*, that a guest does not have standing to challenge the use of guest registration records by the police. *See United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir.1985); *see also* 1 Wayne R. Lafave, *Search and Seizure* § 2.7(c), at 633 (3d ed. 1996) ("[I]f law enforcement agents were allowed to consult business records which merely reveal a person's name or address or telephone number, this does not offend any interests protected by the Fourth Amendment.").

In light of *Miller* and *Willis*, therefore, a guest has no reasonable expectation of privacy in guest registration records. Accordingly, Cormier has failed to allege a Fourth Amendment violation in the police's use of the motel's guest registration records.

### III.

 ▪ Cormier also raises the question of whether reasonable suspicion or probable cause is necessary to justify a "knock and talk" by police. The Fourth Amendment protection against unreasonable searches and seizures is not limited to

one's home, but also extends to such places as hotel or motel rooms. *See Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Because Cormier had a reasonable expectation of privacy in his motel room, the question is whether he voluntarily opened the door or, alternatively, whether there were coercive circumstances that turned an ordinary consensual encounter into one requiring objective suspicion. *See Davis v. United States,* 327 F.2d 301, 303–04 (9th Cir.1964); *see also United States v. Jerez,* 108 F.3d 684, 691–92 (7th Cir.1997) (recognizing that a "knock and talk" is ordinarily consensual unless coercive circumstances such as unreasonable persistence by the officers turn it into an investigatory stop); *United States v. Kim,* 27 F.3d 947, 951 (3d Cir. 1994) (finding in an almost identical case that a polite knock on the door without accompanying coercive circumstances does not create a nonconsensual encounter).

 This Court stated the general rule regarding "knock and talk" encounters almost forty years ago in the following passage:

> Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant there of whether the questioner be a pollster, a salesman, or an officer of the law.

*Davis,* 327 F.2d at 303. That view has now become a firmly-rooted notion in Fourth Amendment jurisprudence. *See Jerez,* 108 F.3d at 691; *United States v. Taylor,* 90 F.3d 903, 909 (4th Cir.1996); *United States v. Tobin,* 923 F.2d 1506, 1511 (11th Cir.1991); *United States v. Roberts,* 747 F.2d 537, 543 (9th Cir.1984). The facts of this case fall under the general rule of *Davis.* Here, Peters knocked on the door for only a short period spanning

seconds. In addition, Peters never announced that she was a police officer while knocking nor did she ever compel Cormier to open the door under the badge of authority. Because there was no police demand to open the door, *see United States v. Winsor,* 846 F.2d 1569, 1573 n. 3 (9th Cir.1988) (en banc), and Peters was not unreasonably persistent in her attempt to obtain access to Cormier's motel room, *see Jerez,* 108 F.3d at 691–92, there is no evidence to indicate that the encounter was anything other than consensual. Therefore, no suspicion needed to be shown in order to justify the "knock and talk." *See Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

### IV.

Cormier challenges the district court's finding that he voluntarily and freely consented to the search of his motel room by advancing several arguments in support of his cause. First, Cormier argues that he was seized prior to tendering his consent to the search, thereby vitiating his consent. Second, Cormier asserts, relying on *State v. Ferrier,* 136 Wash.2d 103, 960 P.2d 927 (1998), that Washington law requires officers to inform the person from whom consent is sought that they can lawfully refuse to consent to the search or revoke consent at any time while the search is being conducted. Cormier alleges that Peters failed to follow this procedure in conducting the "knock and talk." Finally, Cormier contends that his consent was not freely and voluntarily given under federal law. We address each contention in turn.

### A.

 Cormier relies primarily on two Seventh Circuit cases, *United States v. Jerez,* 108 F.3d 684 (7th Cir.1997) and *United States v. Johnson,* 170 F.3d 708 (7th Cir.1999), in arguing that he was seized by Peters prior to tendering his consent. If Cormier was seized at the time he consented to the entry or search of his motel room, such a finding would make

it less likely that his consent was voluntary under the totality of the circumstances test. *See United States v. Chan–Jimenez,* 125 F.3d 1324, 1327 (9th Cir.1997).

 Whether an encounter constitutes a seizure is a mixed question of law and fact reviewed de novo. *See id.* at 1326 (9th Cir.1997). The district court's underlying factual findings, however, are reviewed for clear error. *See United States v. Hernandez,* 27 F.3d 1403, 1406 (9th Cir.1994). A person is seized when "taking into account all the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick,* 501 U.S. at 437, 111 S.Ct. 2382 (internal quotations omitted). Although courts have recognized that nocturnal encounters with the police in a residence (or a hotel or motel room) should be examined with the greatest of caution, *see Jerez,* 108 F.3d at 690–91, the operative test set forth by *Bostick* is that a seizure occurs only when "police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick,* 501 U.S. at 439, 111 S.Ct. 2382.

 While the nocturnal nature of the encounter would weigh in favor of a seizure, Cormier was not seized under the totality of the circumstances because "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382. Several factors support the district court's finding that the encounter was entirely consensual. First, Cormier was confronted by only Peters when he opened the door and she was dressed in plain clothes. *See Orhorhaghe v. INS,* 38 F.3d 488, 494 n. 7 (9th Cir. 1994). In addition, Peters never displayed her weapon during the entire encounter, further illustrating that she did not employ physical force or official authority to gain entry into the room. *See id.* at 495. Third, Peters never spoke to Cormier in

an authoritative tone or led him to believe that he had no choice other than to answer her questions. *See id.* at 495. Furthermore, Cormier failed to present any evidence that he ever attempted to terminate the encounter with Peters or that he was not entitled to do so. Finally, there was no testimony to indicate that Cormier was not "at liberty to ignore the police presence and go about his business." *Bostick,* 501 U.S. at 437, 111 S.Ct. 2382 (citation and internal quotation omitted). These factors combined with the amicable nature of the encounter support the district court's finding that Cormier was not seized.

Although *Johnson* and *Jerez* involved the use of a "knock and talk" procedure, both cases are clearly distinguishable. In *Johnson,* the seizure occurred when the officers stopped Johnson at the door to his apartment and frisked him for weapons despite Johnson's attempt to avoid the patdown. *See Johnson,* 170 F.3d at 712–13. The officers testified that Johnson was not free to leave the apartment and thus there was no question that Johnson was seized and that reasonable suspicion was necessary to justify the investigative stop. *See id.* at 713. The court was careful to point out, however, that the "knock and talk" technique is not inherently unconstitutional; rather, the problem arose because the officers decided to detain a suspect without reasonable suspicion. *See id.* at 720.

Similarly, in *Jerez,* the seizure occurred because the officers were both unusually persistent in their attempts to gain entry into Jerez's apartment and they did so under the badge of authority. *See Jerez,* 108 F.3d at 691–92. Thus, the court found that a consensual encounter had turned into an investigatory stop due to the unique circumstances surrounding the officers' attempted entry into Jerez's apartment, circumstances not present during the encounter between Peters and Cormier. *See id.* at 692.

The factors that caused the *Johnson* and *Jerez* courts to conclude that an investiga-

tory stop had occurred are not present in this case. Therefore, neither case persuades us that Peters' encounter with Cormier was anything other than consensual.

### B.

 The next issue is whether Peters' failure to comply with state law rendered Cormier's consent involuntary. The issue of whether state law, rather than federal law, should be applied in evaluating the merits of a suppression motion is a legal one reviewed de novo. *See Chavez–Vernaza,* 844 F.2d 1368, 1372 (9th Cir. 1987). Cormier relies on *Ferrier,* a case recently decided by the Washington Supreme Court, in arguing that Peters violated state law when she failed to inform Cormier that he had a right not to consent to the search or that he could revoke consent at any time while the search was being conducted. *See Ferrier,* 960 P.2d at 934. The district court assumed that Cormier's consent would be vitiated under the Washington rule, but nonetheless concluded that Cormier's consent was voluntarily and freely given under federal law. We agree because even if state law was violated, Cormier's consent is judged solely under federal law.

 In *Chavez–Vernaza,* the leading case in this Circuit regarding the admissibility of evidence in federal court obtained in violation of state law, this Court considered whether financial records obtained in violation of an Oregon statute should be suppressed. *See Chavez–Vernaza,* 844 F.2d at 1371. State police officers, acting without assistance from federal authorities, seized records later used against Chavez–Vernaza in a federal prosecution. *See id.* at 1372. Chavez–Vernaza made an argument similar to that advanced here: The principle of comity is violated when a federal court does not suppress evidence obtained in violation of state law. In rejecting that argument, this Court unqualifiedly held that "evidence seized in compliance with federal law is admissible without regard to state law," even when state authorities obtained the evidence without any federal involvement. *Id.* at 1374. Accord-

ing to the panel, "requiring federal district courts to look to state law when determining the admissibility of evidence obtained in accordance with federal law would hamper the enforcement of valid federal laws and undermine the policy favoring uniformity of federal evidentiary standards." *Id.* The general rule, therefore, is that evidence will only be excluded in federal court when it violates federal protections, such as those contained in the Fourth Amendment, and not in cases where it is tainted solely under state law. *See id.; United States v. Brady,* 993 F.2d 177, 179 (9th Cir.1993); *United States v. Joseph,* 829 F.2d 724, 728 n. 1 (9th Cir.1987); *United States v. Hall,* 543 F.2d 1229, 1235 (9th Cir.1976) (en banc).

 There are two exceptions to the general rule that state law violations do not require suppression of evidence in federal court. The first exception arises when a court is determining the legality of an inventory search, *see United States v. Wanless,* 882 F.2d 1459, 1463 (9th Cir. 1989), because "federal law on inventory searches by state or local police officers [requires] that they must be conducted in accordance with the official procedures of the relevant state or local police department." *Id.* at 1464. The second exception arises in searches incident to arrest, *see United States v. Mota,* 982 F.2d 1384, 1388 (9th Cir.1993), because "federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest." *Id.* at 1388.

 The common ground shared by these two exceptions is that the federal test for the legality of an inventory search and a search incident to arrest requires the incorporation of state law. For instance, an inventory search is only lawful under federal law if it also conforms to state law. Therefore, state law necessarily influences admissibility determinations, even in federal court. *See Wanless,* 882 F.2d at 1464. By the same token, the legality of a search incident to arrest by its very nature depends on the underlying

legality of the arrest, a consideration governed by state law. *See Mota,* 982 F.2d at 1387. In order to reconcile *Chavez–Vernaza, Wanless,* and *Mota,* it is necessary to recognize that the exceptions to the general rule are limited. State law is only relevant in determining the admissibility of evidence in federal court when the constitutional test for determining the legality of a search incorporates state law.

Because the constitutional test for determining the legality of a consent search, however, depends on whether a defendant's consent was freely and voluntarily given—a test that does not depend on state law—any violation of Washington state law does not require the suppression of evidence presented during Cormier's trial in federal court.

### C.

A question closely related to the issue of seizure is whether Cormier's consent was freely and voluntarily given. "An individual may waive his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person, property, or premises." *United States v. Torres–Sanchez,* 83 F.3d 1123, 1129 (9th Cir.1996). The validity of Cormier's consent is a question of fact, and its resolution depends upon the totality of the circumstances. *See United States v. Morning,* 64 F.3d 531, 533 (9th Cir.1995). Therefore, a district court's finding that the defendant freely consented to a search is reviewed for clear error. *See United States v. Albrektsen,* 151 F.3d 951, 953 (9th Cir.1998).

This Court considers the following five factors in determining whether a person has freely consented to a search: (1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was told he had the right not to consent; and (5) whether the defendant was told that a search warrant could be obtained. *See Morning,* 64 F.3d at 533 (9th Cir.1995). After considering these five factors at some length, the district court ultimately concluded that Cormier's consent was voluntarily and freely given.

The district court's conclusion was not clearly erroneous because there is ample evidence in the record supporting its decision. First, Cormier was not in custody or seized at the time he tendered consent. Second, Peters was dressed in plain clothes and never flashed her gun as a display of authority. These facts are sufficient to support the district court's finding that Cormier consented to the entry and search of his motel room.

The fifth factor, whether the defendant was told that a search warrant could be obtained, has been the source of some disagreement in this Circuit. In *United States v. Kim,* 25 F.3d 1426, 1432 (9th Cir.1994), for example, this Court found that the failure to inform a defendant that a search warrant could be obtained supports a finding that a defendant freely and voluntarily consented to a search. According to *Kim,* the reason for that view is that threatening a defendant with a search warrant intimates that the "withholding of consent would ultimately be futile." *Id.* at 1432. In contrast, in *Torres–Sanchez,* we took the opposite approach, hinting that the failure to inform a defendant that a search warrant could be obtained constituted a failure to apprise him of all his legal rights, similar to not providing *Miranda* warnings once a suspect is in custody. *See Torres–Sanchez,* 83 F.3d at 1130. It appears, therefore, that the application of the fifth factor depends on the particular circumstances of the case and thus hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner. In this case, the district court concluded that Peters' failure to inform Cormier that she could obtain a search warrant supported its view that Cormier freely and voluntarily consented to the search. Under the particular circumstances of this case, the district court's decision was not clearly erroneous.

Cormier counters by arguing that the absence of a *Miranda* warning coupled with a lack of notification regarding his right not to consent invalidated the search. However, the law requires a district court to consider the totality of the circumstances when evaluating consent. Thus, it is not necessary for all five factors to be satisfied in order to sustain a consensual search. For example, in *United States v. Morning*, 64 F.3d 531 (9th Cir.1995), this Court held that a defendant voluntarily consented even though the police had failed to tell the defendant he could refuse consent, neglected to give him a *Miranda* warning, and failed to inform him that a search warrant could be obtained. *See id.* at 533. This case is virtually indistinguishable from *Morning*, providing further support for the district court's decision. Finally, the district court's factual finding that "Mr. Cormier has a very long, detailed and thorough experience with law enforcement," lessens the impact of the two absent factors because it increases the likelihood that Cormier was already aware of his rights to refuse consent and to remain silent. As a result, the district court's decision that Cormier's consent was voluntarily and freely given was not clearly erroneous. *See Torres–Sanchez*, 83 F.3d at 1130 (finding that the failure to give *Miranda* warnings, inform the defendant about his right to refuse consent, and explain that a search warrant could be obtained did not extinguish the defendant's consent).

### V.

■ Cormier's final contention on appeal is that the search of his motel room exceeded the scope of his consent. However, this issue was waived because Cormier failed to present it to the district court. *See Peterson v. Highland Music Inc.*, 140 F.3d 1313, 1321 (9th Cir.1998). Reviewing whether Peters exceeded the scope of consent is a heavily factual inquiry and Cormier's failure to raise the issue before the

district court has left us without the benefit of any factual findings. Accordingly, because Cormier failed to raise the scope of consent in the district court and does not meet any of the recognized exceptions to the waiver rule, we decline his invitation to address this issue on appeal. *See id.*

**AFFIRMED.**