UNITED STATES of America,
Plaintiff–Appellant,

v.

Charley W. DONNELLY,
Defendant–Appellee.

No. 00–30069.

D.C. No. CR–99–00162–A–JKS.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2000.

Decided March 13, 2001.

[redacted]

Before B. FLETCHER and FISHER, Circuit Judges, and SCHWARZER,* District Judge.

## MEMORANDUM [1]

We have jurisdiction over the government's interlocutory appeal pursuant to 18 U.S.C. § 3731 and we reverse the district court's ruling suppressing evidence because it held that the stop and search was illegal.

## I.

[redacted] The propriety of a *Terry* stop is reviewed de novo. *United States v. Fuentes,* 105 F.3d 487, 490 (9th Cir.1997). Although it is a close case, we conclude that the Anchorage Police Department ("APD") had reasonable suspicion to stop and search Donnelly.[2] Pursuant to the Fourth Amendment, "[a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To meet this standard, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry,* 392 U.S. at 21. In the

* The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

2. We also reject two alternative theories that Donnelly presents in his Answering Brief. First, Donnelly argues that when the arresting officers "seized" him at gunpoint, they exceeded the scope of a *Terry* stop, and elevated the situation to an arrest that should be judged under the probable cause standard. Based on cases such as *United States v. Hensley,* 469 U.S. 221, 224-25, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), and *United States v. Greene,* 783 F.2d 1364, 1367-68 (9th Cir. 1986), the use of guns does not automatically convert the *Terry* stop of a suspected armed criminal into an arrest. In this case, the officers had justification to draw their weapons and handcuff the suspect because they were responding to a dispatch warning of a "man with a gun."

Second, Donnelly argues that this case is not dictated by cases such as *New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), which have held that students have a diminished expectation of privacy while at school. We agree—in fact, any argument to the contrary is expressly disavowed in the government's reply brief—because this case clearly involved police officers making arrests off campus.

case of a police radio dispatch, even though the officer who relies on the dispatch need not have knowledge of the basis of the report, the dispatcher must possess reasonable suspicion before directing the officer to make a stop. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *United States v. Robinson*, 536 F.2d 1298, 1300 (9th Cir. 1976).

■ The dispatch officer knew the following facts at the time the dispatch was made: A student at Service High School was seen in a car which was slowly circling the school grounds, and he was believed by school authorities to have a weapon, even though they had not seen him with a gun. The dispatch officer also knew that this student's behavior had caused the school such great alarm that they decided to involve the police, and had asked for immediate assistance.

We hold that, based on the totality of the circumstances, these facts were sufficient to support a *Terry* stop and search. The informant was a reliable source—a school official—whose credibility was not challenged by the defendant. Although the dispatch officer knew that the informant had not seen the student with a gun, she had been told by this reliable source that school security officials were greatly alarmed by the student's presence and suspicious behavior. Although this is a close case, these facts are analogous to other cases in which we held stops and searches to be legal. *See United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir.1990); *United States v. Garcia–Nunez*, 709 F.2d 559, 561 (9th Cir.1983).

## II.

The district court referred repeatedly to Alaska state law in its order and amended order granting Donnelly's motion to suppress. Concluding that the *Terry* stop

was legal under our cases as a matter of pure federal law, we must decide if the violation by police of state law can independently invalidate an investigatory stop and search.

"The general rule ... is that evidence will only be excluded in federal court when it violates federal protections, such as those contained in the Fourth Amendment, and not in cases where it is tainted solely under state law." *United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir.2000). Applying this rule, *Cormier* upheld a consent search even though officers failed to inform the suspects that they had the right to refuse to consent or revoke consent at any time after the search had commenced, as required by state law. *Id.* at 1111–12. *Cormier* distinguished two Ninth Circuit cases that departed from the "general rule" and relied on state law in overturning government searches. First, in *United States v. Wanless*, 882 F.2d 1459, 1463–64 (9th Cir.1989), we reversed the district court's refusal to suppress evidence found in an inventory search of an automobile, because the Washington State Troopers conducted the search without first asking the owner for consent, as required under state law. Second, in *United States v. Mota*, 982 F.2d 1384, 1386–89 (9th Cir. 1993), we suppressed evidence discovered in a search incident to arrest because state law prohibited custodial arrests for violations of the criminal statute in question.

■ We need not decide whether *Terry* "reasonable suspicion" is within *Cormier's* "narrow exception" of rules that can be decided by reference to state law. First, it is arguable that the district court referred only to state law as a factor bearing on the federal "totality" test. For example, it states that "for purposes of this case in evaluating reasonableness, we will consider state law, but not treat it as controlling."

Second, even if some *Terry* stops can be analyzed by reference to state law pursuant to the *Wanless–Mota* doctrine—a proposition that we neither accept or reject—this district court's use of state law would not apply. *Mota* and *Wanless* stand for the proposition that some tests under the Fourth Amendment necessarily rely on state law in the way they are defined. *Cormier,* 220 F.3d at 1111 (summarizing *Mota* and *Wanless*). For example, a search incident to a valid arrest depends, necessarily, on state law definitions of "valid arrest." *Mota,* 982 F.2d at 1387. The district court applied this reasoning imperfectly to the test of reasonable suspicion. The *Wanless–Mota* rule does not mean that the district court is to ask whether the police violated any state laws in apprehending the defendant Instead, in order to invoke the exception, the district court must find that the police violated a state law that has direct bearing on the federal test at issue—in this case, the test of reasonable suspicion. *See Cormier,* 220 F.3d at 1111. In this case, the district court used state law in a much more expansive way. It apparently decided that it is unreasonable for an officer to violate state law and acts that are unreasonable must nullify reasonable suspicion. That proves too much. The fact that the police may not have had the right to arrest the defendant under Alaska law at the time of the *Terry* stop is irrelevant. This was an investigatory stop, which is supposed to be less invasive than an arrest, and is therefore held to a lesser standard under the Fourth Amendment. *Terry,* 392 U.S. at 27. Even if the police could not have arrested Donnelly based on this tip given the crime he was accused of committing, so long as they had a reasonable, articulable suspicion that the crime was being committed or was about to be committed, an investigatory stop was permitted.

The district court also noted that Alaska state law is more protective of search and seizure rights than is federal law. Specifically, when an investigatory search is based on the tip of an informant, Alaska continues to use the old *Aguilar–Spinelli* test, *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which was replaced at the federal level by the *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), "totality of the circumstances test." *See, e.g., State v. Jones,* 706 P.2d 317, 324–25 (Alaska 1985). Under *Aguilar–Spinelli,* an investigatory search based on a tip is only justified if the veracity of the informant and the basis of the tip are verified. Given our court's pronouncements on the need to maintain the uniformity of Fourth Amendment law, *see United States v. Chavez–Vernaza,* 844 F.2d 1368, 1374 (9th Cir.1987), the district court was wrong to apply this relaxed state standard in federal court to trigger the federal exclusionary rule. This is not analogous to the *Wanless–Mota* use of state law. Rather it is an attempt to supplant the federal standard with the state standard.

Neither of the district court's uses of state law relates directly to questions of reasonable suspicion. Thus, we hold that this district court's use of state law was unrelated to the ultimate question of reasonable suspicion.

## CONCLUSION

Because the dispatch officer had a reasonable suspicion that Donnelly was committing or about to commit a crime, the stop and search was legal and the evidence seized can be admitted. We reverse and remand for further proceedings consistent with this memorandum.

REVERSED AND REMANDED.

SCHWARZER, District Judge, dissenting.

I respectfully dissent. The APD's *Terry* stop of Donnelly was not justified by an objective manifestation that Donnelly was engaged, or soon to be engaged, in criminal activity. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (stating that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity").

What did the officers know? From the dispatcher's conversation with Ruth Sanchez, the totality of the circumstances known to them was that the school requested an APD officer "immediately" and that school security had identified Charley Donnelly, who they *believed* had a gun, in a car that was circling school grounds by driving out onto Abbott Road and coming back onto school property. Dispatch also knew that no gun had been seen[1] and that, despite Sanchez's suggestion, there was no outstanding warrant for Donnelly's arrest. Dispatch might also have sensed from the tenor of the conversation that school officials were seriously concerned over Donnelly's activity.

We, of course, know from the record certain facts of which Sanchez did not inform Dispatch: that Donnelly was a troublemaker who had been involved in several prior disciplinary incidents at school, that he had been expelled in January 1999, and was, therefore, illegally on school grounds, and that other students had informed Michael Doody, the Dean of Students, that he was known to possess and carry firearms. Had Dispatch questioned Sanchez as to the basis for the "belief" that Donnelly was carrying a gun,

some of this information might have been communicated to the APD, possibly providing "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). But Dispatch did not engage in any follow-up, relying instead on Sanchez's conjecture. As a result, what the APD had was more akin to an " 'inchoate and unparticularized suspicion or "hunch" ' of criminal activity," *Illinois v. Wardlow,* 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), than a founded suspicion.

The majority, in stating that "[t]he dispatch officer also knew that this student's behavior had caused the school such great alarm that they decided to involve the police," implies that the dispatcher had the information about Donnelly summarized in the preceding paragraph. But the fact is that Dispatch knew nothing except that Donnelly, who was believed to be carrying a gun, was circling the school in a car and that school officials had requested that the police come immediately. The implication is therefore unwarranted and misleading. Similarly, the statement in the next paragraph that the dispatcher had been told that "school security officials were greatly alarmed by the student's presence and suspicious behavior" attaches substance to the call that the record does not support: Dispatch may have been aware of the school officials' sense of urgency, but not of any foundation for a suspicion of criminal activity.

That Sanchez may be considered a reliable source and that she called on behalf of school security officials does not make up for the lack of a particularized and objec-

---

1. Specifically, Dispatch asked, "Did he bring a gun, show them a weapon at all, or they just believed it was there?" When Sanchez responded "They believe that it is," Dispatch asked again "So no weapon was seen?" Sanchez answered, "Not that I am aware of or that actually seen [sic]."

tive basis for suspecting Donnelly of criminal activity. She did not provide the police with better predictive information than the anonymous tipster in *Florida v. J.L.*, 529 U.S. 266, 271–72, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (finding correct identification of accused's clothes and location insufficient to establish reliability of anonymous tip for purpose of establishing reasonable suspicion). This case is analogous to *J.L.* in the sense that there the tipster was anonymous but the information of criminal activity specific; here the tipster was known to be reliable but the information lacking in grounds for suspicion of criminal activity. The Court's reasoning is squarely on point:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 272. Here, while the information Sanchez relayed to the APD (blue Mustang heading west on Abbott, etc.) enabled the officers to find and stop Donnelly, it did not enable them to corroborate the "belief" that Donnelly possessed a gun.

*United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir.1990), cited by the majority, does not support the result. *Del Vizo* involved probable cause to arrest, not reasonable suspicion. While *United States v. Garcia–Nunez*, 709 F.2d 559 (9th Cir. 1983), also cited by the majority, involved reasonable suspicion and is thus more closely on point, the stop there was supported by three separate tips concerning suspicious activity as well as police corrob-

oration. In contrast, Sanchez's report lacked police corroboration. While APD officers matched Donnelly's blue Mustang to the dispatch report, they did not observe Donnelly (or the car) acting in a suspicious manner: The Mustang took no evasive action and pulled over as soon as Lieutenant Bailey activated her emergency lights. The instant case is closer to *United States v. Thomas*, 211 F.3d 1186 (9th Cir.2000), which held a tip from federal agents insufficient to support a finding of reasonable suspicion. While Sanchez's report arguably provided more specifics than the tip in *Thomas*, it was equally conjectural and conclusory. *Id.* at 1189–90. Both were "speculative and unsupported," *id.* at 1190, and neither provided specific and articulable facts with which to justify the stop.

For those reasons I would affirm the district court's suppression order.