[No. G032626. Fourth Dist., Div. Three. June 10, 2004.]

THE PEOPLE, Plaintiff and Appellant, v.
LYNN LEE JENKINS, Defendant and Respondent.

## COUNSEL

Tony Rackauckas, District Attorney, and Stephan L. Sauer, Deputy District Attorney, for Plaintiff and Appellant.

Maureen J. Shanahan, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—Defendant Lynn Lee Jenkins permitted two uniformed officers to search her motel room when they knocked on her door during daytime hours, asked for her identification, and inquired if she was on parole. She was not on parole, and the officers did not have a reasonable suspicion that she was engaged in criminal activity. She was arrested and charged with unlawful possession of a controlled substance found during the search. Defendant moved to suppress the evidence, arguing the "knock and talk" procedure employed by the officers violated her Fourth Amendment rights. The trial court granted the motion and dismissed the case when the People were unable to proceed.

The district attorney contends the court erred in granting the motion because there is no requirement that police officers have a reasonable suspicion of criminal activity before they can knock on someone's door during daytime hours to ask questions or even to ask for consent to search. We agree and therefore reverse and remand the matter for further proceedings to determine whether, under the totality of the circumstances, the encounter was consensual.

### FACTS

Officer Quinn was the only witness to testify at the hearing on the motion to suppress. He had been checking license plates on vehicles parked at a motel one morning when he received information that a particular vehicle was registered to Lynn Jenkins. Thereafter he saw a woman leave room

314, enter the vehicle, and drive away. Quinn next "received . . . a hit or a match on a Lynn Jenkins being on parole for transportation of controlled substances." He left the area for an hour; when he returned, he went to the front office of the motel and asked to see the registration for room 314. A subsequent records check using the driver's license number listed on the registration card revealed "no record of Lynn Jenkins with that driver's license number."

With the assistance of a second uniformed officer, Quinn went to room 314 and knocked on the door. Defendant peeked through the drapes and opened the door 30 seconds later. Quinn asked if she was Lynn Jenkins, and she confirmed that she was; he then asked if she was on parole, and defendant said she was not. When Quinn asked to see her driver's license, defendant left the door open and went to retrieve it. While she did that, Quinn asked defendant if she was the only person in the room, and she said "yes." The officer then asked if he "could search the interior of her room for additional subjects for [his] and Officer Hudson's safety." Quinn initially testified that defendant said, "Yes," but when asked if "those were the exact words she used," he responded, "I don't recall." But he interpreted her response as consent.

Both officers had entered the small room when defendant gave them her driver's license. At some point, they told her to sit down. Quinn checked the bathroom area and found no one, but along the way he noticed "a small . . . line of an off-white crystalline substance on the desk" next to a hollowed-out ballpoint pen. The parties stipulated that the substance was methamphetamine. He then asked for defendant's consent to search the remainder of the room, and she agreed. An additional quantity of methamphetamine was discovered inside the front access panel of a printer sitting on the desk. Sometime during this process, the officers conducted a records check and were advised defendant was not on parole.

## DISCUSSION

The district attorney argues the court erred in granting defendant's motion to suppress because the procedure employed by the arresting officers was not unconstitutional. We agree.

Under the California Constitution, courts are precluded from ordering evidence excluded at trial " 'for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the

United States Supreme Court.' [Citation.]" (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [98 Cal.Rptr.2d 232, 3 P.3d 878], fn. omitted.) We independently review questions of law decided in a ruling on a motion to suppress " 'to determine whether the challenged [search or] seizure meets constitutional standards of reasonableness.' [Citations.]" (*People v. White* (2001) 93 Cal.App.4th 1022, 1025 [113 Cal.Rptr.2d 584].)

Here, the court found the "knock and talk" procedure employed by the officers violated the Fourth Amendment. It relied on purely legal grounds by equating the practice to an investigative detention, which requires a reasonable suspicion of criminal activity to lawfully detain and question a person. The court reasoned, "it makes a big difference if a person's in a public area and on the street. . . . [¶] But when a person comes to your house, and a motel room is a person's house, . . . [¶] . . . it's too intrusive to make that leap that we can go door to door and just say, hi, my name is officer so and so, can I talk to you and would you give me consent to search your house."

However offensive the court may have found the "knock and talk" procedure, we can find no basis in the law to support its conclusion that the practice is unconstitutional. And we will not uphold a ruling "based upon an erroneous legal theory absent which it is unlikely that [the court] would have reached the conclusion it did. [Citations.]" (*People v. Manning* (1973) 33 Cal.App.3d 586, 603 [109 Cal.Rptr. 531].)

■ The United States Supreme Court has not yet squarely addressed the issue before us, and neither has the California Supreme Court. However, the Ninth Circuit has held that the "knock and talk" procedure does not rise to the level of an investigative detention requiring an articulable suspicion of criminal activity. (*U.S. v. Cormier* (9th Cir. 2000) 220 F.3d 1103, 1109.) We find this authority persuasive.

The facts in *Cormier* are somewhat similar to those in this case. There, an officer knocked on the defendant's motel room door at 8:00 p.m. and asked to speak with him after a criminal records check on the motel's guest registration records had been run. The records check indicated the defendant had an extensive criminal history and was a registered sex offender. The defendant allowed the officer to enter the room and consented when she asked if she could look around. The officer found a gun inside the pocket of a jacket hanging in the closet and arrested the defendant for possession of a firearm by a convicted felon. The court concluded, "[b]ecause there was no police demand to open the door, [citation], and [the officer] was not unreasonably

persistent in her attempt to obtain access to Cormier's motel room, [citation], there is no evidence to indicate that the encounter was anything other than consensual. Therefore, no suspicion needed to be shown in order to justify the 'knock and talk.' [Citation.]" (*U.S. v. Cormier, supra*, 220 F.3d at p. 1109.)

In reaching this conclusion, the *Cormier* court relied on *Florida v. Bostick* (1991) 501 U.S. 429 [115 L.Ed.2d 389, 111 S.Ct. 2382]. In *Bostick*, the defendant was charged with trafficking in cocaine after police officers had boarded the bus he was on, asked for consent to search his suitcase, and discovered cocaine in it. The Supreme Court considered whether the officers violated the federal Constitution by randomly questioning passengers on the bus and asking for consent to search their luggage, absent a reasonable suspicion of any criminal activity. The court concluded, "no seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required." (*Id.* at p. 437.)

The constitutionality of the officers' conduct in *Bostick* turned on the consensual nature of such encounters. As a prelude to its ultimate conclusion, the court stated, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation], the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." (*Florida v. Bostick, supra,* 501 U.S. at p. 434.)

The bus in *Bostick* was described as cramped and about to depart; therefore, the defendant argued, he was not free to leave. But the court reasoned "the 'free to leave' analysis . . . [was] inapplicable." (*Florida v. Bostick, supra*, 501 U.S. at p. 436.) While the location of the encounter was a factor to consider, the critical question was whether the defendant felt free to refuse to cooperate with the police. (*Id.* at p. 437.) Thus, the court concluded, "to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Id.* at p. 439.)

The *Cormier* court applied this test to the motel guest's encounter with police, and we think aptly so. Motel guests are entitled to the same

Fourth Amendment protections against unreasonable searches and seizures as are homeowners. (*Stoner v. California* (1964) 376 U.S. 483, 490 [11 L.Ed.2d 856, 84 S.Ct. 889]; *People v. Bennett* (1998) 17 Cal.4th 373, 384 [70 Cal.Rptr.2d 850, 949 P.2d 947].) But there is nothing in our constitutional jurisprudence that makes it illegal for police officers to knock on a person's door unless they first reasonably suspect the person has committed a crime. "Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any [person's] 'castle' with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law." (*Davis v. U.S.* (9th Cir. 1964) 327 F.2d 301, 303.)

In *U.S. v. Jerez* (7th Cir. 1997) 108 F.3d 684, the Seventh Circuit similarly applied *Bostick* to determine whether the police seized the defendants for Fourth Amendment purposes by knocking on their motel room door late at night without a reasonable suspicion. There, the court concluded a seizure had occurred under the totality of the circumstances because the encounter took place in the middle of the night, and the officers persistently knocked on the door for "three full minutes" and commanded the occupants to open the door. (*Id.* at pp. 690–692.) In making this determination, the court stated, "[t]he deputies' persistence, in the face of the refusal to admit, transformed what began as an attempt to engage in a consensual encounter into an investigatory stop. [Citation.]" (*Id.* at p. 692.)

█ Our review of the foregoing cases makes it clear that the court below erred as a matter of law in granting the motion to suppress on the basis that the officers lacked a reasonable suspicion defendant had committed a crime. The proper inquiry is whether the encounter was consensual under the totality of the circumstances. In light of the court's failure to make the necessary factual findings, we decline to rule on the legality of the encounter and remand the matter for the limited purpose of determining whether the officers' conduct would have communicated to a reasonable person that he or she was not free to decline their requests to enter and search the motel room or otherwise terminate the encounter. (*People v. Superior Court* (1976) 65 Cal.App.3d 511, 524 [135 Cal.Rptr. 306].)

## DISPOSITION

The judgment is reversed, and the orders granting the motion to suppress and dismissing the case are vacated. The matter is remanded for a new hearing on the motion to suppress to determine whether the encounter between the officers and respondent was consensual under the totality of the circumstances.

Fybel, J., and Ikola, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein.