NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1412
_____

UNITED STATES OF AMERICA

v.

ARTHUR R. CLAUS,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00125-001)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2012

Before: SCIRICA, RENDELL and SMITH, Circuit Judges

(Opinion Filed: January 17, 2012)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant Arthur Claus appeals from the District Court's denial of his motions to

suppress evidence underlying the drug charge to which he conditionally pleaded guilty.

Claus argues that the officers who conducted the initial search of his home during which

thirteen pounds of marijuana were discovered violated the Fourth Amendment by

accessing the home's curtilage without a warrant, then entering and searching the home pursuant to involuntarily given consent. His arguments, however, do not support reversing the District Court's ruling, and we will therefore affirm.

## I. Background

Since we write principally for the benefit of the parties who are familiar with this case, we recite only the essential facts and procedural history.

On February 23, 2009, three officers approached Claus's home to conduct a "knock and talk" because they suspected that he was engaged in illegal drug activity. To gain access to Claus's two-story house, the officers had to proceed down a concrete staircase leading to a large porch. When two dogs located on the porch began barking, Claus's longtime live-in partner, Karen Henderson, came outside and told the officers – who remained on the staircase – that Claus was not home and that she did not know when he would return. Henderson then took the dogs inside, at which point the officers opened a gate and stepped onto the porch before she returned to the front door.

Henderson continued to speak with the officers from the front doorway, until one asked whether they could continue the discussion inside to prevent wind from blowing his papers away. Henderson then allowed the officers into the house.[1] Once inside, Henderson continued to provide answers the officers believed untruthful until eventually admitting that Claus was in fact upstairs. Upon learning of Claus's location in the home,

[1] The officers testified that Henderson invited them into the house. Henderson testified that she extended no such invitation; according to her account, the officers simply kept walking toward the door until they were inside. We accept the District Court's factual determination that she allowed them into the home. Mem. Op. at 3.

2

officers drew their weapons and shouted for him to come downstairs. When Claus complied with their order by descending the staircase, the officers re-holstered their weapons. In response to Claus's demand to know why they were in his home, the officers explained that Henderson had let them in to which Henderson nodded her head in agreement.

Claus angrily demanded that the officers leave his house and acquire a warrant if they desired to search the premises. In response, one of the officers told Claus that it was highly likely that a search warrant would issue, but it could take some time and the premises would have to be secured in the interim. The officer then introduced consent as a way to save time. The officer also stated that a search pursuant to a warrant could tear up the home, but that if Claus instead consented the house would not be torn apart, the dogs would not be kenneled, and Henderson would not go to jail. Eventually, Claus consented to a search of the premises by signing a written consent form after cutting short the officer's attempt to read it out loud to him.

Claus was granted permission to accompany the two officers while they searched the premises. Henderson stayed in the home with the remaining officer. Eventually, Henderson asked to leave and was allowed to do so. The search lasted for three hours and resulted in the recovery of thirteen pounds of marijuana and seven large garbage bags containing other bags used to store marijuana. Consequently, Claus was placed in custody. The officers subsequently obtained a search warrant for his truck and trailer, execution of which led to the discovery and seizure of incriminating documents.

3

Claus was charged with one count of possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Claus filed motions to suppress all evidence seized from the two searches, arguing that the initial search of his home violated the Fourth Amendment and that the documents obtained from the subsequent search constituted "fruit of the poisonous tree." After holding an evidentiary hearing, the District Court deemed voluntary both Henderson's consent to enter and Claus's consent to search.[2] The District Court therefore denied Claus's motions to suppress.

Claus then entered a conditional plea of guilty, specifically reserving his right to appeal from the District Court's decision on issues raised in his motions to suppress evidence. The instant appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

In reviewing a district court's denial of a motion to suppress, we apply a mixed standard of review. Factual findings are reviewed only for clear error, while legal determinations based upon application of law to fact are subject to plenary review. *See United States v. Shields*, 458 F.3d 269, 276-77 (3d Cir. 2006).

---

[2] In its memorandum opinion and order, the District Court did not address an argument raised by Claus in a post-hearing brief it granted him permission to file: whether the officers' entry onto his porch violated the Fourth Amendment because it constituted part of the home's curtilage.

4

III. Discussion

Claus presents several arguments in support of reversing the District Court's denial of his motions to suppress. We discuss each of these contentions in turn.

a. *Curtilage*

Claus first argues that, by opening a gate to access his front porch, the officers invaded the home's curtilage with neither a warrant, consent, nor exigent circumstances, thereby violating the Fourth Amendment.[3] The long-accepted "knock and talk" technique purportedly used by the officers, urges Claus, did not otherwise permit their conduct. His argument fails.

The protections against unreasonable searches and seizures afforded by the Fourth Amendment extend to the curtilage of a home. *United States v. Dunn*, 480 U.S. 294, 300-01 (1986). The curtilage constitutes any "area . . . so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* at 301. For the purposes of this appeal, we assume that Claus's front porch fits this definition. We do so for two reasons. First, a curtilage determination is factual in nature

_____

[3] The Government contends that Claus waived this argument in his plea agreement. In the agreement, Claus only reserved the ability to "take a direct appeal from his conviction limited to the issues specifically raised in his 'Motion to Suppress Evidence Seized' and 'Supplemental Motion to Suppress Evidence.'" Supp. App. 62. According to the Government, Claus only presented his curtilage argument in a post-hearing brief and not in his initial motions, such that he cannot now raise it on appeal.

We reject the Government's waiver argument. The District Court granted Claus permission to file supplemental briefing in support of his motions to suppress, given testimony elicited at the evidentiary hearing. Claus did exactly that, presenting his curtilage argument as further support for his motions to suppress. We will not now deny him the opportunity to renew his contention on appeal based upon the rather strict interpretation of the plea agreement urged by the Government.

and we lack the benefit of findings by the District Court because it did not address the issue in denying Claus's motions. Second, the porch's attachment to Claus's home and gated entryway are at least suggestive of a private area deserving of protection. Unfortunately for Claus, though, the porch's status as curtilage does not support a determination that the officers' entry violated the Fourth Amendment.

We, like other courts, recognize a "knock and talk" exception to the warrant requirement. *See Smith v. Marasco*, 318 F.3d 497, 519 (3d Cir. 2003). Pursuant to this exception, "officers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." *Id.* That the officers bypassed a short chain-link gate to access Claus's porch in order to speak with Henderson by her front door, then, did not trigger Fourth Amendment concerns associated with warrantless, nonconsensual entries onto curtilage. Though we recognize that the officers proceeded through the gate only after Henderson temporarily left them unattended, their advance did not thereby become unlawful. Henderson's sequestration of barking dogs and immediate return to the porch indicate that, by entering the porch, the officers acted as other visitors would in order to continue their conversation with her.

Claus argues that the officers' conduct should not be sanctioned as a constitutional "knock and talk" because they did not first attempt other less intrusive investigatory steps. However, the recognized purposes behind the "knock and talk" procedure is to either speak with occupants or ask for consent to search. As a result, no objective level of suspicion is required. *See United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (holding that "no suspicion is needed to be shown in order to justify the 'knock and

6

talk'" (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991))). We therefore refuse to impose the additional protections urged by Claus.

The officers did not violate the Fourth Amendment by accessing Claus's porch. Accordingly, Claus's claim that the initial encounter invalidated both Henderson's consent to enter the home and Claus's consent to search the property fails.

b. *Consent*

Claus further argues that the District Court erred by finding that Henderson voluntarily consented to the officers' entry into their home and that Claus voluntarily consented to the officers' subsequent search of the premises. The District Court's determinations of voluntariness, however, constitute findings of fact that we review only for clear error. *See United States v. Price*, 558 F.3d 270, 278 n.7 (3d Cir. 2009). Failing to find any clear error in the District Court's conclusions, we will affirm.

Though under the Fourth Amendment a warrantless entry into and search of a person's home is presumptively unreasonable, consent is a well-established exception. *See id.* at 277. "To justify [entry and] search based upon consent, the government 'has the burden of proving that the consent was, in fact, freely and voluntarily given.'" *Id.* (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The voluntariness of a consent is determined by examining the totality of the circumstances.[4] *Id.* at 278.

---

[4] "[T]he critical factors comprising a totality of the circumstances inquiry include the setting in which the [search] consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting [party]." *United States v. Crandell*, 554 F.3d 79, 88 (3d Cir. 2009) (alterations in original) (citation omitted).

Importantly, however, consent need not be knowing or intelligent, such that it may be given unintentionally and without knowledge of the right to refuse consent. *See United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005).

We hold that the District Court's determination that Henderson voluntarily consented to the officers' entry into the house was not clearly erroneous. The District Court carefully considered Henderson's interaction with the officers, expressly acknowledging the factors that Claus argues render her consent involuntary but finding them outweighed by evidence of Henderson's exercise of free will. Like the District Court, we find particularly persuasive the fact that Henderson freely sequestered her barking dogs, continued to converse with the officers, and eventually invited them inside. Henderson's conduct did not exhibit the coercion Claus contends resulted from the officers' uninvited entry onto the porch, persistent questioning, and knowledge of her nervousness. Though Henderson lacked experience with law enforcement agents, the officers' failure to advise Henderson of her right to refuse consent does not negate the strong evidence of voluntariness.[5] *See, e.g.*, *United States v. Kim*, 27 F.3d 947, 955 (3d

---

[5] Continuing his emphasis of the tactic's susceptibility to abuse, Claus argues that "the government must demonstrate that the citizen was aware of his right to refuse consent" when it conducts a "knock and talk." Appellant Br. at 35. His position, however, finds no support in the law. In fact, the Supreme Court expressly rejected a requirement that officers advise individuals of their right to refuse consent before conducting a search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 231 (1973). The consenting party's knowledge of his or her right to refuse consent is but one factor in the voluntariness inquiry. *See United States v. Price*, 558 F.3d 270, 279 (3d Cir. 2009).

8

Cir. 1994). Therefore, the District Court did not clearly err in concluding that the officers entered Claus's home pursuant to Henderson's voluntary consent.[6]

Similarly, we hold that the District Court did not commit clear error by finding that Claus voluntarily consented to the officers' search of his house and surrounding property. It again undertook careful consideration of Claus's interaction with the officers to make its finding of voluntariness. The officers' suggestion that a search warrant would most likely issue and that consent would spare Claus of the disruptions associated with a warrant's execution did not suffice to render Claus's consent involuntary. As the District Court found, the officers did not make affirmative misrepresentations insinuating that Claus had no choice but to consent; they merely provided a permissible "appraisal of the realities" he faced. *See United States v. Sebetich*, 776 F.2d 412, 425 (3d Cir. 1985). Claus's assertive behavior during the interaction corroborates that the officers' strategy did not coerce his consent. Exhibiting no signs of intimidation, Claus first demanded that the officers obtain a search warrant and then proceeded to negotiate the terms of his consent. Claus's obvious awareness of his right to refuse consent, therefore, well supported the District Court's finding that he voluntarily signed the form pursuant to which the officers searched his property. Accordingly, we will not upset its conclusion.

By entering and searching Claus's property pursuant to voluntary consent, the officers committed no Fourth Amendment violation and appropriately seized the thirteen

---

[6] That Henderson had the requisite authority to consent to the officers' entry is not in dispute because she was a cohabitant of the house. "[T]he consent of one who possesses common authority over premises . . . is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011).

9

pounds of marijuana they discovered. Consequently, the search warrant for Claus's truck and trailer was issued upon constitutionally obtained evidence, such that the documents seized during its execution did not constitute "fruit of the poisonous tree." Therefore, the District Court properly denied both motions to suppress.

## IV. Conclusion

We will affirm the judgment of the District Court denying Claus's motions to suppress.