[No. S138898. June 14, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN RIVERA, Defendant and Appellant.

## COUNSEL

Steven J. Carroll, Public Defender, Matthew C. Braner and Cynthia Grimm, Deputy Public Defenders, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Raquel M. Gonzalez, Steve Oetting and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—The question presented in this People's appeal is whether the Fourth Amendment requires police officers to corroborate an anonymous tip before contacting the occupant of a residence and seeking consent to enter and search. We conclude it does not and reverse the judgment of the Court of Appeal.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2004, around 3:25 p.m., Officer Scott Hunter received a radio report of an anonymous tip that "Juan Rivera," who may have had an outstanding warrant, was at an address in Oceanside. Hunter did not run a records check on the name or seek any other automated information about Rivera or the address provided by the tipster. Hunter and his partner went to the address and spoke with Maria Ortega, who identified herself as the homeowner. Hunter testified that he asked Ortega if she knew Juan Rivera, but he could not recall her answer. Ortega told Hunter to "come inside." At Hunter's request, Ortega consented to a search of her residence.

The officers found defendant in the backyard, sitting in a small doorless shed. Standing at the opening of the shed, Officer Hunter asked defendant's name. Defendant replied he was Juan Rivera. When Hunter asked if he had any weapons, defendant said he was carrying a knife under his clothing. Hunter ordered defendant out of the shed and onto the ground. Hunter handcuffed him and recovered a large knife in a sheath from under defendant's shirt. The officer then confirmed through police dispatch that defendant had an outstanding felony warrant.

Defendant moved to suppress evidence pursuant to Penal Code section 1538.5, arguing that the anonymous, uncorroborated tip was insufficient to justify his detention and search, and that the belated verification of the warrant could not support the officers' actions. The trial court took judicial notice of two valid traffic warrants and a parole warrant. It denied the suppression motion on the basis that the warrants, unverified and standing alone, justified the arrest. Defendant pleaded guilty to carrying a concealed dirk or dagger (Pen. Code, § 12020, subd. (a)(4)), and was sentenced to two years in state prison.

A divided Court of Appeal reversed. The majority ruled that defendant's unverified warrants did not justify the detention and arrest, citing *People v. Sanders* (2003) 31 Cal.4th 318 [2 Cal.Rptr.3d 630, 73 P.3d 496], in which we held that officers must be aware of a defendant's parole search condition to justify a warrantless search on that basis. The majority then considered whether defendant could be detained based on the tip. Relying on *Florida v. J. L.* (2000) 529 U.S. 266 [146 L.Ed.2d 254, 120 S.Ct. 1375], the Court of Appeal explained that a detention based on an anonymous, uncorroborated tip violates the Fourth Amendment. The majority determined that no evidence corroborated the tip and rejected the People's argument that the tip was self-verifying.

The dissenting justice would have affirmed the trial court, reasoning that regardless of the anonymous tip, the homeowner consented to the officers' entry and search: "In this case, at the police officers' request, they were given permission to search the residence where the anonymous tipster indicated Rivera was located. Even assuming that they had no reasonable suspicion for a detention at that point, this 'knock and talk' procedure, seeking permission to search a residence, does not run afoul of the Fourth Amendment. (*People v. Jenkins* (2004) 119 Cal.App.4th 368, 372 [14 Cal.Rptr.3d 197].)" The dissenting justice concluded further that the officers made a consensual contact with defendant that did not escalate to a detention until they learned defendant had a knife.

The majority criticized the dissent for "narrowly focusing on only the contact between the police and [defendant] once he was located, rather than

on whether the initial contact at the residence and search for [defendant] was justified by the uncorroborated anonymous tip. The dissent fails to recognize that but for the uncorroborated anonymous tip, the police would never have encountered [defendant] at the shed located on private property." Thus the majority concluded that the police were required to corroborate the tip before they initially contacted the homeowner.

## II.  DISCUSSION

We hold the Fourth Amendment does not require police to corroborate an anonymous tip before seeking consent to enter and search a residence. Even if acting on an anonymous, uncorroborated tip, police may knock on the door of a residence, speak with the occupant, and request permission to enter and search.

In *Florida v. J. L.*, *supra*, 529 U.S. 266, the United States Supreme Court considered the sufficiency of an anonymous tip to justify a stop and frisk detention. An unidentified caller told police that a young African-American man in a plaid shirt standing at a particular bus stop was carrying a gun. "All the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]." (*Id.* at p. 271.) "The high court held the tip insufficient to justify a brief detention and patdown search, absent some independent corroboration of the reliability of the tip and tipster's assertion of illegal conduct. [Citation.]" (*People v. Wells* (2006) 38 Cal.4th 1078, 1084 [45 Cal.Rptr.3d 8, 136 P.3d 810].)

The police contact at issue in *Florida v. J. L.*, *supra*, 529 U.S. 266, was a detention. Therefore, officers were required " 'reasonably to conclude in light of [their] experience that criminal activity may be afoot . . . .' " (*Id.* at pp. 269–270, quoting *Terry v. Ohio* (1968) 392 U.S. 1, 20 [20 L.Ed.2d 889, 88 S.Ct. 1868].) The reliability of the tip is essential in this context because "[t]he reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." (*Florida v. J. L.*, at p. 271.)

Here, however, the encounter between the police and the homeowner was plainly consensual. Officer Hunter spoke with Ortega at her doorway and asked if she knew Juan Rivera. Ortega told the officers to "come inside," and gave them permission to search her home. There is no evidence that Ortega's consent to search was other than free and voluntary.[1]

---

[1] It is debatable whether defendant could have asserted a Fourth Amendment challenge to the validity of Ortega's consent. In order to do so, defendant would have had to claim that *he* had a legitimate expectation of privacy in Ortega's home. A warrantless search may be based on the consent of a person, other than the accused, who has control over the area searched.

■ Unlike a detention, a consensual encounter between a police officer and an individual does not implicate the Fourth Amendment. It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so. There is no Fourth Amendment violation as long as circumstances are such that a reasonable person would feel free to leave or end the encounter. (*Florida v. Bostick* (1991) 501 U.S. 429, 434–435 [115 L.Ed.2d 389, 111 S.Ct. 2382]; *Florida v. Royer* (1983) 460 U.S. 491, 497 [75 L.Ed.2d 229, 103 S.Ct. 1319]; *In re Manuel G.* (1997) 16 Cal.4th 805, 821 [66 Cal.Rptr.2d 701, 941 P.2d 880].)

Consensual encounters may also take place at the doorway of a home. In a frequently cited opinion, one federal appeals court stated more than 40 years ago: "Absent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof—whether the questioner be a pollster, a salesman, or an officer of the law." (*Davis v. United States* (9th Cir. 1964) 327 F.2d 301, 303.) This view " 'has now become a firmly-rooted notion in Fourth Amendment jurisprudence.' " (*U.S. v. Crapser* (9th Cir. 2007) 472 F.3d 1141, 1146.)

■ Consensual encounters require no articulable suspicion of criminal activity. (*In re Manuel G., supra*, 16 Cal.4th at p. 821; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].)

"[T]he defendant may challenge the validity of the consent insofar as the search infringed his own expectations of privacy under the Fourth Amendment." (*People v. Boyer* (2006) 38 Cal.4th 412, 445 [42 Cal.Rptr.3d 677, 133 P.3d 581].) The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person . . . has a legitimate expectation of privacy in the invaded place." (*Rakas v. Illinois* (1978) 439 U.S. 128, 143 [58 L.Ed.2d 387, 99 S.Ct. 421].) A defendant has the burden to establish a legitimate expectation of privacy in the place searched. (See *id.* at pp. 130–131, fn. 1; see also *People v. McPeters* (1992) 2 Cal.4th 1148, 1172 [9 Cal.Rptr.2d 834, 832 P.2d 146].)

In the trial court, defendant acknowledged that Ortega had given the officers permission to search and did not challenge the voluntariness of that consent. For this reason, the People had no reason to argue that defendant lacked a reasonable expectation of privacy in the premises or to object to defendant's failure to create such a record.

In its briefing in this court, the People describe defendant as a "guest." Even accepting this characterization, we do not know if defendant was an overnight guest who may claim a legitimate expectation of privacy in the premises (*Minnesota v. Olson* (1990) 495 U.S. 91, 98–100 [109 L.Ed.2d 85, 110 S.Ct. 1684]) or simply a temporary visitor for whom we may not impute such an expectation. (See *Minnesota v. Carter* (1998) 525 U.S. 83, 91 [142 L.Ed.2d 373, 119 S.Ct. 469].) However, for purposes of addressing the sole issue presented in this appeal, we will assume, as do both parties, that defendant had an expectation of privacy in Ortega's premises.

Therefore, the genesis and reliability of the tip precipitating the encounter is irrelevant. To require that officers corroborate an anonymous tip before approaching a residence to speak with its occupants demands a level of suspicion that has never been an element of consensual encounters.

There are many reasons why an officer might seek to speak with someone at his or her residence. The People, as did the dissenting justice in the Court of Appeal, describe the particular conduct of the officers here as a "knock and talk" procedure. A number of federal and state courts employ this phrase to describe "officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." (*State v. Reinier* (Iowa 2001) 628 N.W.2d 460, 466.) Federal courts have recognized the "knock and talk" consensual encounter as a legitimate investigative technique. (See *United States v. Thomas* (6th Cir. 2005) 430 F.3d 274, 277, citing cases.)

■ In *People v. Jenkins* (2004) 119 Cal.App.4th 368 [14 Cal.Rptr.3d 197], the Court of Appeal considered a "knock and talk" procedure in which officers knocked on the door of the defendant's motel room during the daytime, asked for identification and whether she was on parole. The defendant said she was not a parolee and consented to a search of her room where the officers found methamphetamine. (*Id.* at pp. 370–371.) The trial court concluded the "knock and talk" procedure violated the Fourth Amendment, equating the "knock and talk" practice to an investigative detention. The Court of Appeal reversed, stating: "[T]here is nothing in our constitutional jurisprudence that makes it illegal for police officers to knock on a person's door unless they first reasonably suspect the person has committed a crime." (*Jenkins*, at p. 374.) The Court of Appeal relied on *U.S. v. Cormier* (9th Cir. 2000) 220 F.3d 1103, 1109, for the principle that "the 'knock and talk' procedure does not rise to the level of an investigative detention requiring an articulable suspicion of criminal activity." (*People v. Jenkins, supra*, 119 Cal.App.4th at p. 372.) Instead, the *Jenkins* court framed the proper inquiry as whether the police encounter with the defendant was consensual under the totality of the circumstances. (*Id.* at p. 374; see also *U.S. v. Crapser, supra*, 472 F.3d at pp. 1141, 1143–1144 [officers used "knock and talk" at motel room to speak with occupant and determine if he was the person identified in an arrest warrant]; *U.S. v. Weston* (6th Cir. 2006) 443 F.3d 661, 666–667 [officers used "knock and talk" to approach the front door, inquire about stolen vehicles and seek consent to search the property]; *Redden v. State* (Ind.Ct.App. 2006) 850 N.E.2d 451, 455–456 [officers conducted "knock and talk" after confidential informant advised of methamphetamine manufacturing at the residence]; *Gompf v. State* (2005) 2005 WY 112 [120 P.3d 980, 986–987] [acting on an uncorroborated tip about a stolen handgun, officers conducted a "knock and talk" to speak with the tenant and obtain consent to search]; *People v. Frohriep* (2001) 247 Mich.App. 692

[637 N.W.2d 562, 564–565, 568] [acting on information that defendant might have controlled substances on property, police used "knock and talk" to approach defendant in yard and request permission to search].)

Defendant urges us to establish a new rule that police must corroborate an anonymous tip before seeking consent to search a residence. He argues that without such a rule, anonymous, untraceable persons could all too easily dispatch officers to the home of a perceived enemy, setting in motion an intrusive or embarrassing home search. He complains that allowing police to contact occupants of homes without taking minimal steps to corroborate anonymous tips renders officers "agents of the malicious" and imperils the sanctity of the home. Quoting *Georgia v. Randolph* (2006) 547 U.S. 103 [164 L.Ed.2d 208, 126 S.Ct. 1515, 1523], defendant emphasizes that " 'the home is entitled to special protection as the center of the private lives of our people.' "

■ The sanctity of the home is not threatened when police approach a residence, converse with the homeowner, and properly obtain consent to search. The Fourth Amendment's prohibition against warrantless searches of homes does not apply when voluntary consent to the search has been given by someone authorized to do so. (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 181 [111 L.Ed.2d 148, 110 S.Ct. 2793].) Regardless of the tip that brought the officers to Ortega's door, it was her consent that allowed them to enter and search. There is no evidence that this consent was involuntary. Ortega had the right to refuse to speak with the officers and to deny them entry. As this court observed in *People v. Ledesma* (2006) 39 Cal.4th 641, 704 [47 Cal.Rptr.3d 326, 140 P.3d 657], a *request* to enter and search, "by its nature, carries the implication that permission may be withheld." No heightened level of Fourth Amendment scrutiny arises in this consensual contact, either because it was precipitated by an anonymous tip or because it occurred at a home.

Nevertheless, after receiving consent to search the residence, the officers required a lawful basis on which to *detain* defendant. The Court of Appeal majority erroneously determined that the initial contact between the officers and the homeowner was improper. It did not analyze whether the officers acted with proper justification once they found defendant in the shed. The lawfulness of that detention and search is beyond the scope of the single issue for which this court granted review. Thus we reverse the judgment and remand for further proceedings. On remand, the Court of Appeal should consider whether, after the officers' legitimate entry, their detention and search of defendant was proper under the Fourth Amendment.

## III.  DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded for proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.