Filed 6/18/14  P. v. Gonzales CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057971 |
| v. | (Super.Ct.No. FSB1101776) |
| REYES QUIROGA GONZALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno, Judge.  Affirmed.

Kyle D. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Reyes Q. Gonzales pled guilty to two counts of possession for sale of a

1

controlled substance (counts 1 & 3; Health & Saf. Code, § 11351)[1] after the court denied his motion to suppress the evidence against him. Pursuant to his plea agreement, the court sentenced defendant to the upper term of four years on count 1 and a concurrent, lower term of two years on count 3. On appeal, defendant contends the court erred in denying his motion to suppress the evidence. We affirm the judgment.

FACTS AND PROCEDURAL HISTORY[2]

Detective Sean Flynn of the Redlands Police Department testified that on October 12, 2010, he was on duty at a motel in San Bernardino to investigate a report of drug activity. He observed defendant and Norra Mokhtar. Flynn contacted defendant who was standing next to a blue truck; Flynn asked if he could search defendant; defendant responded that he could.

Flynn found a plastic baggie containing heroin, Hydrocodone pills, and methamphetamine in defendant's pocket. Defendant also had $896 in cash. The heroin was separated into five baggies weighing in total 13.79 grams. The methamphetamine was separated into three different baggies weighing 5.63 grams in the aggregate. Defendant's cell phone contained text messages which reflected discussions regarding drug deals.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2] The parties stipulated that the factual basis for defendant's plea was contained in the police reports, the preliminary hearing transcript, the complaint, and the information.

Defendant's motel room was searched in which more Hydrocodone pills were found. Two different types of Hydrocodone pills were found, 87 pills of one type and 28 pills of another type, between defendant's pocket and the motel room. Defendant admitted the pills were his. Based on the amount of drugs, the packaging, the lack of paraphernalia, and the text messages regarding drugs on defendant's cell phone, Flynn opined that the drugs were possessed for sales.

The People charged defendant by information with two counts of possession for sale of a controlled substance (counts 1 & 3; § 11351), heroin and methamphetamine respectively, and one count of possession for sale of a controlled substance, Hydrocodone (count 2; § 11378). The People additionally alleged prior narcotic conviction allegations attached to counts 1 through 3. (§ 11370.2, subds. (a) & (c).)

DISCUSSION

Defendant contends the court erred in declining to suppress all the evidence against him. He argues the warrantless searches of his person and motel room were in violation of his constitutional rights. We disagree.

Defendant filed a motion to suppress all the evidence against him in support of the information. The People filed a response to which defendant filed a reply. On October 5, 2012, and October 12, 2012, the court held hearings on defendant's motion.

Flynn testified that on October 12, 2010, he and four other officers arrived in a motel parking lot in San Bernardino in separate unmarked vehicles as part of a narcotics investigation. Flynn had specific information there was narcotics activity at that location.

3

None of the police vehicles blocked the egress of any of the vehicles in the parking lot. Flynn observed four suspects, including defendant, exit room 129 of the motel; three of them, including Mokhtar and Robert Nolan, walked to a blue pickup truck parked in the parking lot. The fourth suspect entered a white pickup truck and left.

"All five officers made contact with the three subjects in the pickup. No one contacted the fourth subject that left the room." The officers approached the suspects with their hands at their sides; none of them drew their weapons during their contact with the suspects. Flynn contacted defendant, identified himself as a police officer, and asked defendant if he could speak with him. Defendant said yes; Flynn then turned on his personal recorder. Defendant was free to leave during the initial encounter.

The People played an audio recording of the initial encounter with defendant. Flynn asked if defendant spoke English. Defendant responded that he did. Flynn asked if he could check defendant's person to make sure he did not have any weapons. Defendant agreed. Flynn found a plastic baggie containing pills, 13 grams of heroin, and five grams of methamphetamine sticking out from the top of defendant's right front pants pocket. Flynn detained defendant at that point. Flynn asked if the motel room from which defendant exited was his; defendant responded it was. Flynn asked if there were any other persons inside the motel room; defendant said there were not.

Flynn obtained the key to the room from the motel manager in order to conduct a

4

protective sweep of the room. Afterward, Flynn went back to defendant, read him his *Miranda*[3] rights, and asked for permission to search the room. The People played a recording of Flynn's second conversation with defendant. During that conversation defendant admitted the heroin was his. Defendant said he took the pills for his teeth. The officers looked at defendant's cell phone and found text messages from defendant to someone else regarding drug sales and the robbery of heroin from another individual.

Officer Dan Figgins testified he arrived at the motel at the same time as Flynn in a separate unmarked vehicle.[4] All the officers were dressed in regular street clothes with department issued black vests with a department badge on the front and "Police" written across the front and back of the vests. Figgins made contact with Mokhtar and asked if he could speak with her. She responded that he could. He asked if she had anything illegal on her. She said she did not. Figgins asked if there was anything illegal in Mokhtar's purse and whether she would mind if he checked. Mokhtar responded that she did not mind if he looked and told him there was a small amount of marijuana in her purse. Figgins found marijuana and methamphetamine in the purse. Figgins then detained Mokhtar and informed Flynn what he had found. None of the officers blocked

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

[4] Figgins initially testified there were five other officers in addition to himself, for a total of six officers. However, on cross-examination, Figgins implied, on separate occasions, there were only five and four officers in total.

the egress of defendant's truck with their vehicles. At no point did any of the officers remove their weapons during their encounter with the suspects.

Flynn then spoke with both Mokhtar and defendant. The People played another audio recording of a third conversation between Flynn and defendant. Flynn asked defendant if there was anything illegal in the motel room. Defendant responded that there were probably some pills in the drawer. Flynn asked if it was okay if the officers searched the motel room to make sure there were no illegal drugs or guns inside. Defendant responded "Yeah."

Nolan testified he exited the motel room with defendant. "[A]bout four" police officers pulled up on them wearing black jumpsuits and identifying themselves as police officers. The first thing Nolan saw was a gun: "I saw about four cops. One pulled a gun out, put it in the back of my head and said get up against your car." There were about four officers, all of whom had their weapons drawn. The officers searched Nolan and his vehicle without asking permission to do so. They did not find anything illegal on Nolan. An officer searched defendant.

The court indicated a tentative decision to deny the motion to suppress, but allowed argument on the matter and offered defendant the opportunity to file a supplemental brief. On November 2, 2012, defendant filed a supplemental brief in support of his motion to suppress the evidence. On November 8, 2012, the People filed a response. On December 14, 2012, the court indicated it had considered the supplemental briefs and denied the motion to suppress as indicated in its tentative decision.

6

Thereafter, defendant pled guilty to counts 1 and 3. Pursuant to the plea bargain, on the People's motion, the court dismissed count 2. The prior narcotic conviction allegations attached to all counts were stricken.

A. Search of Defendant's Person.

"'Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards.' [Citations.] 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' [Citation.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.) "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority. [Citations.]" (*Florida v. Royer* (1983) 460 U.S. 491, 497.)

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. . . . Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search . . . provided they do not induce cooperation by coercive means. . . . If a reasonable person would feel free to

7

terminate the encounter, then he or she has not been seized." (*United States v. Drayton* (2002) 536 U.S. 194, 200-201 (*Drayton*).)

"The Fourth Amendment permits police officers to approach [individuals] at random to ask questions and to request their consent to searches, provided a reasonable person would understand that he or she is free to refuse. . . ." (*Drayton, supra,* 536 U.S. 194 at p. 197 [Bus passengers' acquiescence to three police officers' requests to check their bags while they were on the bus during refueling with no particularized suspicion and no declaration that the passengers need not comply did not violate Fourth Amendment prohibition against unreasonable searches.].)

Here, we defer to the court's factual findings. The court stated in its tentative decision that "in this particular case there were five officers approaching four people as they were leaving a motel room. One person leaves in a truck, and none of the officers follow that person or tries to stop that vehicle. The officers pull up in their cars. They do not block the cars in. One of the officers is — has a canine which remains in the vehicle. The officers testified that their guns were not drawn. That there was no command to stop or submit. . . . Very shortly after the contact was made with them, drugs were observed on [defendant] coming out of his pocket. Which then at that time creates probable cause to detain him." "It's the court's . . . opinion that based on the circumstances of this case that it was initially a consensual encounter based on the facts indicated . . . . And that shortly, within less than a minute, apparently it turned into probable cause for a detention because of the narcotics found on the person of both [defendant] and [] Mokhtar."

8

Thus, here, Flynn's request to patdown defendant and defendant's acquiescence made the "search" consensual and, therefore, not violative of the Fourth Amendment's proscription against unreasonable search and seizures. The five officers were wearing vests identifying them as police officers. They identified themselves as police officers. Although all the officers had sidearms, the court specifically found they remained holstered during the entire encounter. This determination was well supported by the testimony. "Officers are often required to wear uniforms and in many circumstances this is cause for assurance, not discomfort. Much the same can be said for wearing sidearms. That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." (*Drayton, supra,* 536 U.S. at pp. 204-205.)

Flynn testified defendant was free to leave at the time he initially approached defendant. The officers' vehicles did not block in defendant's vehicle; thus, defendant could have left in the blue pickup truck at any time. Flynn asked defendant if he could check defendant's person for weapons. Defendant responded that Flynn could. Flynn found a bag containing heroin, Hydrocodone, and methamphetamine sticking out of defendant's pants pocket. This was sufficient probable cause to warrant Flynn's then detention of defendant. "There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice. It is beyond question that

9

had this encounter occurred on the street, it would be constitutional." (*Drayton, supra,* 536 U.S. at p. 204.) Therefore, the court properly denied defendant's motion to suppress the evidence found on his person.

B. Search of Defendant's Motel Room.

"The sanctity of the home is not threatened when police approach a residence, converse with the homeowner, and properly obtain consent to search. The Fourth Amendment's prohibition against warrantless searches of homes does not apply when voluntary consent to the search has been given by someone authorized to do so. [Citation.] Regardless of the tip that brought the officers to [the defendant's] door, it was her consent that allowed them to enter and search. There is no evidence that this consent was involuntary. [The defendant] had the right to refuse to speak with the officers and to deny them entry. As this court [has previously] observed . . . a *request* to enter and search, 'by its nature, carries the implication that permission may be withheld.' No heightened level of Fourth Amendment scrutiny arises in this consensual contact, either because it was precipitated by an anonymous tip or because it occurred at a home." (*People v. Rivera* (2007) 41 Cal.4th 304, 311 quoting *People v. Ledesma* (2006) 39 Cal.4th 641, 704.) "This protection extends to motel and hotel rooms in which the occupant has a reasonable expectation of privacy. [Citations.]" (*People v. Parson* (2008) 44 Cal.4th 332, 345.)

Defendant informed Flynn the motel room was his. Once Flynn detained defendant, he read defendant his *Miranda* rights which defendant expressed he

10

understood.  Defendant admitted the pills were his.  During the protective sweep of the motel room, the officers had not observed anything illegal.  Flynn asked defendant if anything else illegal was in the motel room.  Defendant responded that there were probably some pills in the drawer.  Flynn asked if he could search the room to check for illegal drugs.  Defendant gave permission to search the room.  Thus, the search of defendant's motel room and seizure of the Hydrocodone pills in the drawer were the result of defendant's express consent.  The court properly denied defendant's motion to suppress the evidence against him.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.

11